**Gregor BOYD, James Burton, and Alvin Cantrell, Plaintiffs,**

v.

**TENNESSEE STATE UNIVERSITY and State of Tennessee Board of Regents, Defendants.**

No. 3:90–0688.

United States District Court, M.D. Tennessee, Nashville Division.

March 24, 1994.

Helen Sfikas Rogers, Jones & Rogers, Walter Thomas Searcy, III, Nashville, TN, for Gregor Boyd and Alvin Cantrell.

Helen Sfikas Rogers, Jones & Rogers, Walter Thomas Searcy, III, Kal W. Helou, Nashville, TN, for James Burton.

Jimmy Glen Creecy, Leslie Ann Bridges, Elizabeth G. Rasmussen, Office of the Atty. Gen., Nashville, TN, for Tennessee State University, Tennessee State Bd. of Regents, Donald Lewis.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiffs' third amended complaint invokes this court's pendent jurisdiction [1] to hear a

---

1. The new federal statute covering adjudication of state claims in federal court subsumes pendent

state claim for malicious harassment.[2] Aside from this jurisdictional allusion, however, there is no specific cause of action asserted for malicious harassment. It is clear, nevertheless, that such a cause is intended; indeed, plaintiffs previously filed a motion to amend their complaint so that they could add this claim. To the defendants' credit, they do not bother with the pro forma argument that this claim should be barred for lack of specific pleading. *See* Fed.R.Civ.P. 8(f) (a court should construe all pleadings so "as to do substantial justice"). The defendants do argue, however, that this claim is barred by the doctrine of sovereign immunity. This argument has merit.

## I

### *Pendent Jurisdiction and Sovereign Immunity*

█ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." *U.S. Const.* amend XI. The Supreme Court has consistently interpreted the Eleventh Amendment to mean " 'that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.' Absent waiver, neither a State nor agencies acting under its control may be 'subject to suit in federal court.' " *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* —— U.S. ——, ——, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605, 612 (1993) (quoting *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974) and *Welch v. Texas Dep't of Highways and Public Transp.,* 483 U.S.

468, 480, 107 S.Ct. 2941, 2949, 97 L.Ed.2d 389 (1987)). This immunity applies to actions of all types.[3] *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984).

█ It is important to note that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Id.* at 99, 104 S.Ct. at 907. "For this reason, the Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment in the federal courts." *Id.* at 99 n. 9, 104 S.Ct. at 907 n. 9. To proceed against a state in federal court via pendent jurisdiction, the state's consent to such suits must have been "unequivocally expressed." *Id.* at 99, 104 S.Ct. at 907.

### *Immunity of the Present Defendants*

█ From the preceding, it is apparent that two questions must be answered to determine the applicability of sovereign immunity in the present case. First, are the defendants agencies of the state to which sovereign immunity applies? Second, if immunity does apply, has this immunity been waived? These are federal questions that require examination of state law for resolution. *See Estate of Ritter v. University of Mich.,* 851 F.2d 846, 848 (6th Cir.1988).

█ There is no serious question that the defendants here, Tennessee State University ("TSU") and the Tennessee Board of Regents ("TBR"), are state agencies covered by the state's grant of sovereign immunity. The touchstone of sovereign immunity applicability is whether a successful action against

and ancillary jurisdiction under the rubric "supplemental jurisdiction." *See* 28 U.S.C.A. § 1367 (West Supp.1993). For consistency with the parties' pleadings, the term "pendent jurisdiction" will be used here.

**2.** The Tennessee Human Rights Act made malicious harassment, originally a criminal offense only, actionable in civil court. *See* Tenn.Code Ann. §§ 39–17–309, 4–21–701.

**3.** In addition to state waiver, Congress may abrogate sovereign immunity by its acts. *See Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14, 109

S.Ct. 2273, 2281, 105 L.Ed.2d 1 (1989) ("[O]ur decisions mark a trail unmistakably leading to the conclusion that Congress may permit suits against the States for money damages."). Such abrogation must be unambiguous. *See Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1145–46, 59 L.Ed.2d 358 (1979). In addition, courts may enjoin state officials to act in accordance with federal law. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Such an action is taken not to be one against the state for Eleventh Amendment purposes.

a defendant would require tapping into the state's treasury for payment of the judgment; if so, then the state is taken to be the real defendant in interest and the action is barred by the Eleventh Amendment—absent waiver. *See id.* at 850. Because any recovery against TSU or TBR would be paid by state funds, *see Greenhill v. Carpenter*, 718 S.W.2d 268, 271–72 (Tenn.Ct.App.1986) (discussing the effect of suits against state universities on public funds), these defendants are protected by sovereign immunity.

This conclusion only adds to several like conclusions before. This very court previously ruled that East Tennessee State University was an "arm of the state" for Eleventh Amendment purposes. *See Kompara v. Board of Regents of the State Univ.*, 548 F.Supp. 537, 542 (M.D.Tenn.1982) (determining immunity from suit pursuant to 42 U.S.C. § 1983). The Eastern District has likewise ruled that the "University of Tennessee is an agency of the state and therefore is immune from suit except to the extent it has consented to be sued." *Carlson v. Highter*, 612 F.Supp. 603, 604–05 (E.D.Tenn.1985) (citing *University of Tennessee v. Peoples Bank*, 6 S.W.2d 328 (1928)). Furthermore, Tennessee courts have repeatedly held that Tennessee's state universities and university officials are appendages of the state for purposes of sovereign immunity. *See Dunn v. W.F. Jameson & Sons, Inc.*, 569 S.W.2d 799 (Tenn. 1978); *Applewhite v. Memphis State Univ.*, 495 S.W.2d 190 (Tenn.1973); *Greenhill v. Carpenter*, 718 S.W.2d 268 (Tenn.Ct.App. 1986). *But see Applewhite*, 495 S.W.2d at 196–97 (corporations owned and controlled by state university not necessarily entitled to sovereign immunity). Accordingly, the defendants are immune from suit unless the state has expressed a clear consent to their being sued in federal court.

■ The second question—has the State of Tennessee waived its immunity from suit in federal court with respect to a state civil claim for malicious harassment—poses little more difficulty than the first. As noted above, evidence of a waiver to the specific claim raised is insufficient; there must as well be a waiver with respect to pursuit of a claim in federal court. For it is well within a state's power to consent to suit solely within its own courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir.1985) ("[T]he fact that the state has waived immunity from suit in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts."); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir.1982) ("[W]here the sovereign consents to be sued in a specially designated court, any resulting waiver is not general but is confined to actions brought in the forum designated.").

■ The Tennessee legislature has established three avenues for pursuing an action under the Tennessee Human Rights Act ("THRA"): (1) filing of a complaint with the Tennessee Human Rights Commission, (2) appeal of this Commission's decision to the Chancery Court, or (3) filing of an action in Chancery Court. *See* Tenn.Code Ann. §§ 4–21–302, –307, –311 (19 & Supp.1993); *see also Hoge v. Roy H. Park Broadcasting*, 673 S.W.2d 157, 158 (Tenn.Ct.App.1984) (describing these avenues); *Roberson v. University of Tenn.*, 1988 WL 74236, at * 3 (Tenn.Ct. App. July 19, 1988) (holding that actions against the state may be initiated in the Commission or Chancery Court). Direct pursuit of an action in federal district court is not one of the permissible avenues. There is no express consent by Tennessee, neither within the THRA nor elsewhere, to suit in federal court for claims under the THRA.[4] Therefore, assuming that Tennessee state agencies may be sued for malicious harass-

---

**4.** The Eastern District of Tennessee has ruled that the Tennessee legislature, in enacting the THRA, waived any immunity a local utilities board may have had under the Tennessee Governmental Tort Liabilities Act. *See Rooks v. Chattanooga Elec. Power Bd.*, 738 F.Supp. 1163, 1163 (E.D.Tenn.1990). From the scant facts of the opinion, it appears that the utilities board is not an entity to which sovereign immunity may possibly apply. *See also Eason v. Memphis, Light, Gas & Water Div.*, 866 S.W.2d 952, 955 (Tenn.Ct.App.1993) (agreeing with *Rooks* that a local utility is not immune to THRA claims by virtue of the Governmental Tort Liability Act; no sovereign immunity issues raised).

ment,[5] such suits could only be brought before the Human Rights Commission or in Chancery Court. The plaintiffs' pendent state claim being one under the THRA, it must accordingly be dismissed.[6]

## II

For the reasons stated above, the defendants' motion to dismiss will be granted in an accompanying Order. Plaintiffs request that their state claim be remanded to state court if pendent jurisdiction is determined to be inappropriate. However, since the original complaint was filed in this court rather than in state court, such a remand would be improper. *See Jones v. City of Carlisle*, 3 F.3d 945, 950 (6th Cir.1993).

### ORDER

For the reasons stated in the Memorandum filed herewith, the defendants' motion to dismiss the pendent state claim is hereby GRANTED.

IT IS SO ORDERED.

---

**5.** I do not reach the question of whether Tennessee has consented to suit for malicious harassment. This is a difficult question which the Tennessee courts have not addressed. On the one hand, it appears that the state and its agencies fall within the definition of "persons" who may be liable for malicious harassment. *See* Tenn.Code Ann. § 39–11–106(a)(27) (1991) (defining "person" to include any "governmental subdivision or agency"). On the other hand, it would seem that the Tennessee legislature intended claims such as those of the plaintiffs to be brought under the employment discrimination sections of the THRA, not the malicious harassment section. *See id.* §§ 4–21–401 to –408; *see also id.* § 4–21–102(4) (unambiguously defining "employer" to include "the state, or any political or subdivision thereof"). Plaintiffs' citation of

*Roberson v. University of Tenn.*, 829 S.W.2d 149 (Tenn.Ct.App.1992), is not helpful because that case did not address the question of whether a civil suit may be brought against the state for malicious harassment; *Roberson* involved actions for sex discrimination and retaliation. *See id.* at 150. Nor did *Roberson* involve questions of federal pendent jurisdiction.

**6.** The requirement of explicit consent to pendent jurisdiction applies, of course, only to state defendants. Federal supplemental jurisdiction with regard to THRA claims may be exercised over other defendants. *See, e.g., McKennon v. Nashville Banner Publishing Co.*, 797 F.Supp. 604 (M.D.Tenn.1992).